In re Nomination Petitions of James FARROW for Office of State Representative of the 162 nd Legislative District in the Democratic Primary.

Paula M. Brown, Petitioner.

Commonwealth Court of Pennsylvania.

Argued Feb. 16, 2000.

Decided Feb. 17, 2000.

Publication Ordered May 24, 2000.

Joel S. Robbins, Prospect Park, for petitioner.

Raymond J. Santarelli, Blue Bell, for respondent.

Gregory E. Dunlap, Harrisburg, for intervenor, Gov. Thomas J. Ridge.

PELLEGRINI, Judge.

Before this Court is a petition filed *pro se* in our original jurisdiction by Paula M. Brown (Brown) objecting to the nomination petition filed by James Farrow (Farrow) for Office of State Representative of the 162 nd Legislative District in the Democratic primary to be held on April 4, 2000 as being untimely filed.

The primary election to be held on April 4, 2000 required that nomination petitions be filed no later than 5:00 p.m. on January 25, 2000, the tenth Tuesday prior to the primary election, pursuant to Section 913 of the Election Code, 25 P.S. § 2873. On January 25, 2000, the Governor of Pennsylvania issued an Executive Order extending the deadline for filing nomination petitions to 5:00 p.m. on Wednesday, January 26, 2000 due to the "sudden and severe winter storm [that] struck Pennsylvania with

large amounts of snow accumulation, icing conditions, and high winds." The Governor stated the Executive Order was based upon the authority vested in him by the Constitution, the Emergency Management Services Code, 35 Pa.C.S. § 7301–7111, and other laws of the Commonwealth. Farrow did not file his nomination petition until January 26, 2000.

Brown then filed the petition now before us[1] arguing that the Governor did not have the power to extend the statutorily mandated filing time for nomination petitions because there was no legitimate emergency existing on Tuesday, January 25, 2000 that would justify the use of the Emergency Management Services Code.[2] Specifically, she points out that numerous state offices remained open,[3] including the State Office for filing Election Petitions, and that she had been informed by the Governor's Aide, Joseph Gursik, that the Governor had signed the Executive Order to allow certain candidates from the Southeastern part of the State to file their petitions, yet she came from the Southeastern part of the State on that same day. Brown further points out that the Executive Order was not made until approximately 3:00 p.m. on January 25, 2000, and it did not provide that a "State of Emergency" was declared throughout the State of Pennsylvania.

Brown also argues that Farrow's petitions were not properly circulated because 1) he did not declare his candidacy until Friday, January 21, 2000 and certain sig-natures on his petition were dated and signed before that date; 2) many of the people who signed Farrow's petitions were not registered voters or registered democrats but were Republicans, were not residents of the 162nd Legislative District, and were not otherwise legally entitled to sign the petitions; 3) many of the petitions were circulated by people who did not sign as circulators but illegally had other qualified persons sign as circulators; and 4) Farrow's petitions were still being circulated on Tuesday, January 25, 2000, the day on which they should have been filed in Harrisburg.

Addressing first Browns' contention that the Governor had no authority to extend the filing deadline for the nomination petitions, the Governor cited the Emergency Management Services Code (Code) as authority for extending the filing deadline due to inclemental weather. Pursuant to the Code, the Governor is responsible for meeting the dangers to the Commonwealth and people presented by disasters. 35 Pa.C.S. § 7301(a). "Disaster" is defined under the Code as a "natural disaster" which is further defined as "any hurricane, tornado, storm, flood, high water, wind-driven water, tidal wave, earthquake, landslide, mudslide, *snowstorm*, drought, fire explosion or other catastrophe which results in substantial damage to property, hardship, suffering or possible loss of life." (Emphasis added.) 35 Pa.C.S. § 7102. The Governor has the authority to declare a disaster emergency[4] by Executive Order after de-

---

1. Objections to nomination petitions must be filed within seven days after the last day for filing such petitions. Section 977 of the Election Code, 25 Pa.C.S. § 2937. Brown filed her petition on February 1, 2000, seven days after the original January 25, 2000 deadline.

2. In response to Brown's petition, the Governor filed a petition to intervene which we granted.

3. Brown set forth the following list of State Offices and services that remained open on January 25, 2000:

   ● The Pennsylvania Turnpike
   ● Amtrak and all other trains were running to and from Harrisburg
   ● Bus service to and from Harrisburg
   ● The Governor's Office
   ● The State Office for filing Election Petitions
   ● All state offices in the Capital and in the surrounding areas of Harrisburg and Linglestown

4. The Code defines "disaster emergency" as those conditions which may by investigation made, be found, actually or likely, to:

   (1) affect seriously the safety, health or welfare of a substantial number of citizens of

termining that the threat of a disaster is imminent, 35 Pa.C.S. § 7301(c), and may suspend the provisions of any regulatory statute prescribing the procedures for conduct of Commonwealth business if strict compliance with its provisions would in any way prevent, hinder or delay necessary action in coping with the emergency. *See* 35 Pa.C.S. § 7301(f)(1). The Executive Order must indicate the nature of the disaster, the area or areas threatened, and the conditions that have brought about the disaster. 35 Pa.C.S. § 7301(c). The contents of the Executive Order must be disseminated promptly by any means calculated to bring its contents to the attention of the general public. *Id.* The Executive Order providing for the state of disaster emergency continues until the Governor finds that emergency conditions no longer exist and terminates the state of disaster emergency also by Executive Order. *Id.*

Here, even though the Governor's Executive Order did not state that he was declaring a "State of Emergency" in Pennsylvania, the Executive Order he issued on January 25, 2000 did in fact because it contained all the requirements to so declare a state of emergency. The Governor found that a disaster/disaster emergency existed, i.e., that "a sudden and severe

winter storm struck Pennsylvania with large amounts of snow accumulation, icing conditions and high winds." He explained that as a result of those conditions, it was "necessary to extend the filing deadline for all nomination petitions by 24 hours in order to give all candidates a fair and reasonable opportunity to file their petitions with the Secretary of the Commonwealth." [5] Additionally, the Governor stated that the Executive Order was to go into effect immediately and remain in effect until 5:00 p.m. on January 26, 2000. Finally, the Executive Order was disseminated to the public by a news release.[6] Because the Governor had the authority to extend the filing deadline for the nomination petitions and complied with the requirements under the Code, Brown's contention is without merit.

■ As to her arguments that Farrow's nomination petitions were not properly circulated, Section 977 of the Election Code [7] requires that:

All nomination petitions and papers received and filed within the periods limited by this act shall be deemed valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court *specifically setting forth the objec-*

---

this Commonwealth or preclude the operation or use of essential public facilities; (2) be of such magnitude or severity as to render essential State supplementation of county and local efforts or resources exerted or utilized in alleviating the danger, damage, suffering or hardship face; and (3) have been caused by forces beyond the control of man, by reason of civil disorder, riot or disturbance, or by factors not foreseen and not known to exist when appropriation bills were enacted.

5. In his petition to intervene, the Governor also states that he extended the filing deadline so as to accommodate the needs of the employees of the Department of State so they could reach their homes in the treacherous conditions.

6. The news release stated in part:
"I will sign this Executive Order later this afternoon," Gov. Ridge said. "but I wanted to announce my intentions immediately so

that any candidates who still need to file would not have to venture out into dangerous driving conditions. I encourage candidates to take advantage of the extension if they feel that travel conditions are hazardous in their regions.
"For those candidates who already are on their way to Harrisburg, we will keep the Department of State's Bureau of Commissions, Elections and Legislation open to accept petitions until 5 p.m. today."
The Governor also provides in his petition to intervene that due to the storm conditions, "the Secretary of Administration, acting under authority granted to him by the Governor, began announcing the early closure of State offices in Philadelphia, Scranton, Reading and Harrisburg."

7. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2937.

*tions thereto,* and praying that the petition or paper be set aside. (Emphasis added.)

25 P.S. § 2937. Our Supreme Court in *In re Nominating Petitions of Duffy,* 535 Pa. 286, 635 A.2d 111 (1993), by way of further explanation held if any challenger claimed that any signature on the petitions was invalid, he was required to cite the page, line and reason for the invalidity in his petition to challenge.

Here, Brown merely makes general allegations regarding Farrow's petitions, e.g., that *certain* signatures were dated and signed before Brown declared his candidacy, that *many* people who signed the petitions were not registered voters or registered democrats, and that *many* of the petitions were circulated by people who did not sign as circulators. These challenges are not sufficiently specific and we will not entertain those objections.

■ Finally, regarding Brown's contention that Farrow's nomination petitions must fail because they were still being circulated on January 25, 2000, the day on which they should have been filed, Section 913(f) of the Election Code, 25 P.S. § 2873(f) provides that petitions to be filed shall not be received later than 5 o'clock P.M. on the last day for filing. Had an Executive Order not been issued, Farrow could have circulated his nomination petitions on January 25, 2000 and still have filed them by 5 o'clock P.M. that day. Just because the filing date was extended for one day does not change the fact that Farrow could still circulate his petitions on the day they were to be filed.

Accordingly, for all of the reasons stated above, Brown's objections to Farrow's nomination petitions are denied.

### ORDER

AND NOW, this 17th day of February, 2000, the petition filed by Paula M. Brown objecting to the Nomination Petition filed by James Farrow is dismissed.